Filed 4/18/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JOSEPH SEMPRINI et al., | |
| Plaintiffs and Respondents, | G062622 |
| v. | (Super. Ct. No. 30-2015-00776114) |
| WEDBUSH SECURITIES INC., | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, Randall J. Sherman, Judge.  Affirmed.  Motion to dismiss denied.

Loeb & Loeb, Michelle M. La Mar, Terrance D. Garnett, Devin A. Donohue, and Andrew M. Hutchison for Defendant and Appellant.

Callahan, Thompson, Sherman & Caudill, Robert W. Thompson, and Charles S. Russell for Plaintiffs and Respondents.

*          *          *

This is an appeal from an order denying an employer's motion to compel certain claims and parties to arbitration in a certified wage and hour class action. Finding the employer waived its right to arbitrate those claims by unreasonably delaying its motion to compel, we affirm.

Joseph Semprini filed this lawsuit against his employer, Wedbush Securities, Inc. (Wedbush), in March 2015, alleging 11 causes of action unique to him (e.g., for wrongful termination and discrimination) and seven putative class claims for alleged wage and hour violations. In April 2015, Semprini amended his complaint to add a representative cause of action under the Private Attorneys General Act of 2004 (PAGA) (Lab. Code, § 2698 et seq.). In May 2015, Semprini and Wedbush stipulated that Semprini's 11 personal claims would be arbitrated, while the remaining eight causes of action would proceed in the trial court. The class was certified in 2017, and the parties litigated Semprini's class and PAGA claims in the trial court over the next several years, conducting extensive discovery, motion practice, and trial preparation.

Two events occurred in 2022 that, according to Wedbush, afforded it a new right to compel certain claims to arbitration, notwithstanding its 2015 stipulation. First, in June 2022, the United States Supreme Court issued its decision in *Viking River Cruises, Inc. v. Moriana* (2022) 596 U.S. 639 (*Viking River*), holding that, contrary to prior California Supreme Court authority, an employer may enforce an employee's agreement to arbitrate individual PAGA claims. Second, in the wake of *Viking River*, Wedbush asked its workforce to sign arbitration agreements, and two dozen class members, including the second named plaintiff, Bradley Swain, agreed to do so in September and October 2022.

In March 2023, just five months before trial, Wedbush filed a motion to (1) compel the named plaintiffs to arbitrate their individual PAGA claims under *Viking River*, and (2) compel to arbitration Swain and the 23 other class members who signed

2

arbitration agreements in the fall of 2022.  The trial court denied Wedbush's motion, finding it had waived its right to compel arbitration by entering into the 2015 stipulation.

Although we rely on a different analysis than that relied on by the trial court, we affirm.  As we explain below, even if *Viking River* or the fall 2022 arbitration agreements gave Wedbush a new right to move to compel certain claims to arbitration, Wedbush waited too long to make its motion, particularly in light of the looming trial date.  *Viking River* was decided in June 2022; the 24 class members signed arbitration agreements in September and October 2022; but Wedbush waited until March 2023 to file its motion to compel arbitration.  During that interim period Wedbush propounded discovery and filed other motions.  Wedbush did not attempt to enforce its alleged arbitration rights until nine months post-*Viking River* and five to six months after select class members signed the new arbitration agreements.  The record therefore supports the trial court's finding that Wedbush waived its right to compel arbitration.

## FACTS

Wedbush is a securities broker-dealer firm that provides financial planning and investment products through its financial advisors.  It classifies its California financial advisors as exempt.

In March 2015, Joseph Semprini, a Wedbush financial advisor, filed a complaint against Wedbush individually and on behalf of a proposed class.  In causes of action one through seven, Semprini alleged Wedbush misclassified him and his fellow employees as exempt and therefore committed various Labor Code violations, including failure to pay minimum wage, failure to pay overtime, and failure to provide meal and rest periods.  In causes of action eight through 18, Semprini asserted claims that were personal to him, such as disability discrimination, failure to accommodate, retaliation, and wrongful termination.

3

One month later, before Wedbush had filed a responsive pleading, Semprini filed a first amended complaint adding a 19th cause of action under PAGA. PAGA is a 2004 statute that permits private plaintiffs to sue their employers on behalf of the State of California and collect civil penalties for Labor Code violations committed against them and other aggrieved employees. Semprini brought his PAGA claim both as an individual and as a representative.

In May 2015, Semprini and Wedbush stipulated that Semprini's personal claims would be arbitrated in accordance with an earlier agreement between Wedbush and Semprini, and Semprini's remaining claims (i.e., his wage and hour claims and PAGA claim) would proceed in the trial court.[1] The stipulation recited that "there is a written agreement between [Semprini and Wedbush] whereby they agreed that non-class and non-putative class disputes between them shall be resolved by arbitration before the [FINRA]." The parties stipulated (1) Semprini's "purely individual claims (causes of action 8-18) shall be resolved by FINRA arbitration," (2) Semprini's "purely individual claims (causes of action 8-18) in this action should be stayed, pursuant to California Code of Civil Procedure section 1281.4, pending the resolution of the FINRA arbitration," and (3) "all other causes of action will proceed before this Court." The trial court signed the stipulation as an order in June 2015.

Semprini initiated the FINRA arbitration of his personal claims in July 2015. Several years later, a three-member arbitration panel issued an award in favor of Semprini on some claims and in favor of Wedbush on others.

---

[1] Per Semprini's arbitration agreement, any dispute arising from his employment would be resolved through arbitration under Financial Industry Regulatory Authority (FINRA) rules, and "[i]f the law prohibits arbitration for any specific claim, all other non-prohibited claims shall continue to be arbitrated." The agreement did not address the arbitrability of class or representative actions.

4

Meanwhile, back in the trial court, the parties litigated Semprini's wage and hour claims. Semprini moved to certify a class in 2016; in June 2017, the court certified a class of about 105 current and former Wedbush employees who were paid once per month and who earned commissions. Notice of the class action was sent to persons identified as meeting the class definition.

In November 2017, with Semprini's health in decline, Bradley Swain joined the action as a second named plaintiff.[2] The second amended complaint filed by Semprini and Swain (collectively, Plaintiffs) alleged the same 19 causes of action alleged in the first amended complaint.

Wedbush raised the administrative exemption as an affirmative defense to Plaintiffs' wage and hour claims. This white collar exemption from overtime and related wage and hour laws only applies if the employee earns "a monthly salary equivalent to no less than two (2) times the state minimum wage for full-time employment." (Cal. Code Regs., tit. 8, § 11040, subd. 1(A)(2)(g).) The parties disputed whether Wedbush's compensation structure for class members met the salary basis test.

The trial court held a bench trial on that issue in 2019. After finding in favor of Wedbush, the court entered a judgment for Wedbush and dismissed Plaintiffs' wage and hour claims, including the PAGA claims. Plaintiffs appealed. This court reversed the judgment, holding Wedbush's compensation structure does not satisfy the salary basis test and the administrative exemption does not apply. (*Semprini v. Wedbush Securities, Inc.* (2020) 57 Cal.App.5th 246, 248.)

On remand, with leave of court, Wedbush filed an amended answer in April 2021, asserting a new affirmative defense based on the commissioned employee

---

[2]     In light of the death of Joseph Semprini in May 2023, Bradley Swain is the sole remaining class representative.

5

exemption. The parties then engaged in additional discovery on the applicability of that exemption.

Meanwhile, Wedbush identified additional potential class members, and the parties stipulated a second notice should be sent. As a result, the class grew to about 180 members.

In June 2022, while the parties were engaged in discovery, the United States Supreme Court announced its decision in *Viking River*, holding that an employer may enforce an employee's agreement to arbitrate individual PAGA claims and then seek a dismissal in court of any remaining non-individual, representative PAGA claims based on lack of standing. (*Viking River, supra,* 596 U.S. at pp. 662-663.)

Following that change in the law, in the fall of 2022, Wedbush asked its workforce to sign arbitration agreements agreeing that all claims against Wedbush (including individual PAGA claims) would be resolved through binding FINRA arbitration, and waiving any right to pursue a PAGA claim on a representative basis. Out of the entire certified class, 24 class members, including Swain, signed such arbitration agreements in September and October 2022.

In the months that followed, despite the approaching May 1 trial date, Wedbush did not advise Plaintiffs of its intent to move to compel arbitration pursuant to either *Viking River* or the newly signed arbitration agreements. Instead, Wedbush filed a motion to decertify the class in October 2022, and a motion to exclude certain class members from the class in November 2022. In January and February 2023, it propounded further written discovery on each named plaintiff, including additional requests for production of documents, special interrogatories, requests for admissions, form employment interrogatories, and deposition notices.

On March 17, 2023, the trial court continued the trial date from May 1, 2023 to August 21, 2023. On March 22, 2023, Wedbush filed its motion (1) to compel Semprini and Swain to arbitrate their individual PAGA claims, and then dismiss the

remaining representative portion of their PAGA claims for lack of standing under *Viking River*, and (2) to compel the 24 class members who signed arbitration agreements in the fall of 2022 to arbitration.

After hearing oral argument, the trial court denied Wedbush's motion, finding Wedbush had waived its right to compel arbitration by entering into the 2015 stipulation, in which the parties had agreed that, with the exception of Semprini's purely individual causes of action (which were to proceed to FINRA arbitration), "all other causes of action will proceed before this Court." The court did not address *Viking River* or the new arbitration agreements in its ruling.

This appeal followed.[3]

## DISCUSSION

1.    *General Principles*

California law, like the Federal Arbitration Act, "reflects a strong policy favoring arbitration agreements." (*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1195 (*St. Agnes*).) "The party seeking arbitration bears the burden of proving the existence of an arbitration agreement, and the party opposing arbitration bears the burden of proving any defense." (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236.)

Waiver is one such defense to arbitration. "Although a court may deny a petition to compel arbitration on the ground of waiver [citation], waivers are not to be

---

[3]    Plaintiffs filed a motion to dismiss Wedbush's appeal as frivolous. We have the inherent power to dismiss a frivolous appeal—that is, an appeal that indisputably has no merit or that is prosecuted for an improper motive (e.g., harassment or delay). (*In re Marriage of Deal* (2022) 80 Cal.App.5th 71, 79.) As we have previously observed, that power "should not be used except in the absolutely clearest cases." (*People ex rel. Lockyer v. Brar* (2004) 115 Cal.App.4th 1315, 1318.) Although we affirm the trial court's order, we cannot say the appeal is clearly frivolous and therefore deny Plaintiffs' motion to dismiss.

7

lightly inferred and the party seeking to establish a waiver bears a heavy burden of proof." (*St. Agnes*, *supra*, 31 Cal.4th at p. 1195; see Code Civ. Proc., § 1281.2, subd. (a).)

"[T]he term 'waiver' has a number of meanings in statute and case law. [Citation.] While 'waiver' generally denotes the voluntary relinquishment of a known right, it can also refer to the loss of a right as a result of a party's failure to perform an act it is required to perform, regardless of the party's intent to relinquish the right. [Citations.] In the arbitration context, '[t]he term "waiver" has also been used as a shorthand statement for the conclusion that a contractual right to arbitration has been lost.'" (*St. Agnes, supra,* 31 Cal.4th at p. 1195, fn. 4.)

"'""California courts have found a waiver of the right to demand arbitration in a variety of contexts"'"" (*St. Agnes, supra*, 31 Cal.4th at p. 1196), and "no single test delineates the nature of the conduct that will constitute a waiver of arbitration" (*id.* at p. 1195). However, six discretionary factors help guide a court's waiver assessment: "'""(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether 'the litigation machinery has been substantially invoked' and the parties 'were well into preparation of a lawsuit' before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) 'whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place'; and (6) whether the delay 'affected, misled, or prejudiced' the opposing party."'"" (*Id.* at p. 1196.)

Courts have found a waiver of the right to arbitration if the party seeking to compel arbitration has previously taken steps inconsistent with an intent to invoke arbitration or has unreasonably delayed in undertaking the procedure. (*St. Agnes, supra*, 31 Cal.4th at p. 1196.) "Although participating in the litigation of an arbitrable claim does not by itself waive a party's right to later seek to arbitrate the matter, at some point

8

continued litigation of the dispute justifies a finding of waiver." (*Fleming Distribution Co. v. Younan* (2020) 49 Cal.App.5th 73, 80.)

It is well established that a four to six month delay in enforcing the right to arbitrate may result in a finding of waiver if the party acted inconsistently with the intent to arbitrate during that window. (See, e.g., *Desert Regional Medical Center, Inc. v. Miller* (2022) 87 Cal.App.5th 295, 317 [one year delay between Labor Commissioner decision and arbitration demand supported waiver finding]; *Lewis v. Fletcher Jones Motor Cars, Inc.* (2012) 205 Cal.App.4th 436, 446 (*Lewis*) [defendant waived its right to arbitrate by waiting four months before it "expressed a desire to arbitrate" and waiting another month to file its motion]; *Augusta v. Keehn & Associates* (2011) 193 Cal.App.4th 331, 338-339 [waiver found due to a five and a half month delay between the filing of complaint and filing of motion to compel arbitration]; *Adolph v. Coastal Auto Sales, Inc.* (2010) 184 Cal.App.4th 1443, 1451-1452 [finding waiver due to a delay of six months between filing of lawsuit and demand for arbitration]; *Guess?, Inc. v. Superior Court* (2000) 79 Cal.App.4th 553, 555, 557-558 [finding waiver when three months elapsed between the filing of the lawsuit and defendant's motion to compel arbitration]; *Kaneko Ford Design v. Citipark, Inc.* (1988) 202 Cal.App.3d 1220, 1228-1229 [affirming waiver finding when five and a half months elapsed between filing lawsuit and motion to compel arbitration].)

"Whether a party has waived the right to compel arbitration is generally a question of fact. A trial court's finding of waiver is therefore reviewed under the substantial evidence standard unless '"the facts are undisputed and only one inference may reasonably be drawn,"' in which case '"the reviewing court is not bound by the trial court's ruling."'" (*Sprunk v. Prisma LLC* (2017) 14 Cal.App.5th 785, 794.)[4]

---

[4] In this case, we believe substantial evidence review is appropriate given the various factual issues surrounding Wedbush's conduct in 2022 and 2023, but even if we were to review this matter de novo, our conclusion would be the same.

9

2.     *Analysis*

Wedbush contends the trial court erred in denying its motion to compel arbitration. Wedbush argues the court incorrectly interpreted the scope of the 2015 stipulation, which was entered into before the class was certified and before Swain was added as a named plaintiff, and which therefore cannot be read as agreeing that no future class member could ever be subject to arbitration. Wedbush asserts it cannot have waived its right to arbitrate by signing the 2015 stipulation because it did not then have a right to compel the subject claims to arbitration; that right arose in 2022, when *Viking River* was decided and later when the 24 class members signed arbitration agreements.

a.     *The 2015 Stipulation*

We first consider Semprini's 2015 stipulation with Wedbush. We interpret the stipulation in accordance with the ordinary rules of contract interpretation, giving effect to the mutual intention of the parties at the time the stipulation was entered. (*Dowling v. Farmers Ins. Exchange* (2012) 208 Cal.App.4th 685, 694–695; Civ. Code, § 1636.)

The 2015 stipulation recited that "there is a written agreement between [Semprini and Wedbush] whereby they agreed that non-class and non-putative class disputes between them shall be resolved by arbitration before the [FINRA]."[5] The stipulation then specified that causes of action eight through 18 (Semprini's individual claims like discrimination and wrongful termination) would be arbitrated and that "all other causes of action will proceed before this Court."

---

[5]     This language confirms Wedbush understood in 2015 that Semprini's class claims could not be compelled to arbitration. And rightly so, since Semprini's arbitration agreement did not address the issue of classwide arbitration. (See *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.* (2010) 559 U.S. 662, 666, 687 [court may not compel classwide arbitration when arbitration agreement is silent on availability of classwide arbitration].)

10

In agreeing that causes of action one through seven and 19 would "proceed before" the trial court, Wedbush waived the right to arbitrate Semprini's class or representative claims, at least to the extent Wedbush had such a right at the time. The question remains, however, whether later developments in the case—specifically, the Supreme Court's 2022 decision in *Viking River* or the 2022 arbitration agreements with Swain and 23 other class members—gave rise to a new right to compel arbitration that did not exist when Semprini and Wedbush entered into the 2015 stipulation.

       b.      *The* Viking River *Decision*

Before *Viking River*, it was settled law in California that PAGA claims could not be split into "individual" and "representative" components (the individual component corresponding to the alleged violations experienced by the plaintiff, and the representative component corresponding to the alleged violations experienced by other employees), and further that individual PAGA claims could not be compelled to arbitration in whole or in part. (See *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 382-384 (*Iskanian*), overruled on other grounds in *Viking River, supra*, 596 U.S. 639.) In *Viking River*, the United States Supreme Court rejected that portion of *Iskanian*, holding that PAGA claims may be split into individual and representative components and that an employer may enforce an agreement to arbitrate the individual component of an employee's PAGA claim. (*Viking River,* at p. 662.)

Wedbush argues it could not have waived its right to arbitrate the named plaintiffs' individual PAGA claims in the 2015 stipulation because it did not have a right to arbitrate those claims until 2022 when *Viking River* was decided. According to Wedbush, its failure to compel those claims to arbitration earlier in the litigation was reasonable and did not result in a waiver, because any such attempted motion would have been futile given the state of the law at the time.

We observe without deciding that Wedbush may be correct when it argues that, if a motion to compel arbitration lacked a realistic chance of success when a lawsuit

11

was filed, a subsequent change in the law may constitute good cause for failure to assert a right to arbitrate earlier. (See *Iskanian, supra*, 59 Cal.4th at p. 377 [recognizing futility as a ground for delaying a petition to compel arbitration, and finding no waiver because delay in compelling arbitration "was reasonable in light of the state of the law at the time"].) If a party "abandons arbitration because it is resisted by the opposing party and foreclosed by existing law, the mere fact that the parties then proceed to engage in various forms of pretrial litigation does not compel the conclusion that the party has waived its right to arbitrate when a later change in the law permits arbitration." (*Id.* at pp. 377-378.)

Indeed, our court recently found that an employer that failed to move to compel arbitration of the plaintiffs' PAGA claims until the Supreme Court granted certiorari in *Viking River* did not waive its right to arbitrate as a matter of law. (*Piplack v. In-N-Out Burgers* (2023) 88 Cal.App.5th 1281 (*Piplack*).) In *Piplack*, two plaintiffs filed a PAGA claim against their former employer, seeking civil penalties on their own behalf and on behalf of other aggrieved employees. (*Id.* at pp. 1285-1286.) The parties were bound by a predispute arbitration agreement with a PAGA waiver and severability clauses requiring severance of the PAGA waiver if "'necessary to ensure that the individual [PAGA] action proceed[ed] in arbitration.'" (*Id.* at p. 1285.) The court case proceeded "with the filing of answers, demurrers, amended complaints, and a discovery motion." (*Id.* at p. 1286.) However, two months after the Supreme Court granted certiorari in *Viking River*, the employer filed a motion to compel arbitration, which the trial court summarily denied. (*Ibid*.)

We reversed, holding the employer did not waive its right to arbitrate, as a matter of law, because the employer "raised its right to arbitrate as soon as it had any chance of success" based on *Viking River*. (*Piplack, supra*, 88 Cal.App.5th at p. 1289.) "The fact that defendant vigorously defended itself in the trial court [made] no difference

12

because the relevant question [was] whether there was any *unreasonable* delay," and the plaintiffs' failure to request arbitration before *Viking River* was not unreasonable. (*Ibid*.)

Other courts have reached similar conclusions. For example, in *Barrera v. Apple American Group LLC* (2023) 95 Cal.App.5th 63 (*Barrera*), our colleagues in the First District relied on *Piplack* in determining the defendants did not waive their "right to arbitrate by 'litigating th[e] case for over a year' before filing their motion to compel arbitration." (*Id.* at p. 77.) The court noted the defendants "moved to compel arbitration soon after [they] learned the United States Supreme Court granted certiorari in *Viking River* with respect to the *Iskanian* rule—which they explained in their motion was 'the only obstacle to arbitration of the claim here' and likely to be overturned in *Viking River*." (*Id.* at pp. 78-79.) "Given these circumstances, any delay in bringing their motion was not unreasonable." (*Id*. at p. 79.)

This case, however, is distinguishable from those described above. In *Piplack*, the "defendant raised its right to arbitrate as soon as it had any chance of success" (*Piplack, supra*, 88 Cal.App.5th at p. 1289), filing its motion to compel arbitration in February 2022 while the *Viking River* case was still pending before the Supreme Court (*id.* at p. 1286). Similarly, in *Barrera,* the defendant filed its motion to compel arbitration March 2022 while *Viking River* was still pending review. (*Barrera, supra,* 95 Cal.App.5th at p. 71.)

Here, Wedbush waited until nine months after the Supreme Court issued the *Viking River* decision to file its motion to compel arbitration. During those nine months Wedbush engaged in conduct inconsistent with an intent to compel arbitration, including motion practice and discovery, and we find nothing in our record to suggest Wedbush advised Plaintiffs of its plans to compel arbitration during that time. That nine-month delay, coupled with Wedbush's other conduct inconsistent with an intent to compel arbitration, resulted in a waiver. (See, e.g., *Lewis, supra,* 205 Cal.App.4th at p. 446.)

13

c.       *The Fall 2022 Arbitration Agreements*

We next consider whether Wedbush can compel to arbitration the claims of the 24 class members who signed arbitration agreements in September and October 2022, notwithstanding the 2015 stipulation.

Initially, as we indicated to counsel during oral argument, we have concerns about the enforceability of the 2022 arbitration agreements.  On the one hand, a different panel of this court recently enforced an arbitration agreement the plaintiff signed two days after filing her lawsuit, noting the agreement was broadly worded so as to apply retroactively to pending controversies.  (*Franco v. Greystone Ridge Condominium* (2019) 39 Cal.App.5th 221, 223-224; see *Oswald v. Murray Plumbing & Heating Corp.* (2022) 82 Cal.App.5th 938, 944 [citing *Franco* for the proposition that "[a] contracting party may agree to an arbitration clause that applies retroactively to a pending lawsuit, affecting claims that arose while the plaintiff worked for the defendant but before the arbitration clause was signed, if the clause explicitly applies to all claims relating to the employment"].)  On the other hand, *Franco* did not involve a pending class action, and the employer presented the arbitration agreement to the plaintiff before she filed the lawsuit.

The facts here raise legal and ethical issues about an employer's ability to contact members of a certified class who are represented by counsel midway through the litigation to ask them to sign arbitration agreements that impact that litigation.  (See *Salgado v. Carrows Restaurants, Inc.* (2019) 33 Cal.App.5th 356, 358-359, 363 [remanding matter to trial court to determine whether employer knew employee was represented by counsel when it asked her to sign an arbitration agreement two weeks after she filed lawsuit against employer, and if so, to evaluate agreement's unconscionability]; *OConner v. Agilant Solutions, Inc.* (S.D.N.Y. 2020) 444 F.Supp.3d 593, 603 [employer's communications to putative class members in pending case concerning newly rolled out arbitration agreements were improper and misleading].)

14

Our record does not disclose whether Wedbush advised its employees about the impact the agreements could have on the pending class action or whether Wedbush received permission from counsel to communicate with represented individuals. The arbitration agreements themselves do not specifically reference the class action or otherwise inform the signatories that they are potentially giving up their existing rights to participate in a pending case.

Assuming without deciding that Wedbush could properly contact represented members of a certified class to ask them to sign arbitration agreements, the question remains whether those 2022 arbitration agreements would negate Wedbush's 2015 stipulation that causes of action one through seven and 19 would "proceed before this Court." Wedbush has not cited any case in which a subsequently executed arbitration agreement acted to void a previous stipulation that waived a defendant's right to compel arbitration of certain claims, and we have found none.

We need not resolve that question, however, because even if Wedbush could validly ask a named plaintiff and other members of a pending certified class action to agree to arbitrate their claims mid-litigation, and even if an arbitration agreement entered into under those circumstances would control over the 2015 stipulation, Wedbush did not file a motion to compel those 24 class members to arbitration until March 2023— five months after the agreements were executed. That five-month delay, coupled with Wedbush's other litigation conduct during that window, supports the trial court's determination that its conduct constituted a waiver. (See *Lewis, supra,* 205 Cal.App.4th at p. 446.)

As we observed in *Piplack,* "the relevant question is whether there was any *unreasonable* delay." (*Piplack, supra*, 88 Cal.App.5th at p. 1289.) Wedbush offers no reasonable explanation for its delay in filing its motion. On this record, substantial evidence supports a finding that Wedbush waived its right to compel arbitration.

15

## DISPOSITION

The order denying Wedbush's motion to compel arbitration is affirmed. Plaintiffs are to recover their costs on appeal.


GOETHALS, ACTING P. J.

WE CONCUR:


SANCHEZ, J.


DELANEY, J.